UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LES TELECOMMUNICATIONS
D'HAITI S.A.M.,

                        Plaintiff,

        – against –

FRANCK CINE,

                    Defendant.

**MEMORANDUM &
ORDER**

13-CV-6462

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 1 3 2014 ★
BROOKLYN OFFICE

**Appearances:**

For Plaintiff:    Bertrand Rolf Madsen
                    Madsen Law P.C.
                    111 Broadway, Trinity Building
                    13th Floor, Suite 1305
                    New York, NY 10006

                    Joshua B. Spector and Paul D. Turner
                    Perlman, Bajandas, Yevoli & Albright
                    1000 Brickell Avenue
                    Suite 600
                    Miami, FL 33131

For Defendant:  Guy A. Lewis, Matthew Simmons, Michael R. Tein, and Michelle Durieux
                    Lewis Tein, PL
                    3059 Grand Avenue
                    Suite 340
                    Coconut Grove, FL 33133

**JACK B. WEINSTEIN, Senior United States District Judge:**

I.     Introduction .................................................................................... 2

II.    Facts ................................................................................................ 3

III.   Law ................................................................................................. 8

    1.    Contract Formation................................................................. 8



1

    2.      Waiver............................................................................................8

IV.     Application of Law to Facts .............................................................9

    1.      Remedial Power of the District Court.....................................9

    2.      Contract Formation............................................................9

    3.      Waiver of Arbitration Clause ...........................................11

V.      Conclusion ...................................................................................12

## I.  Introduction

Defendant Franck Cine served plaintiff Les Telecommunications d'Haiti S.A.M.

("Teleco") with a Demand for Arbitration in August 2013. Teleco responded by filing suit

against Cine, seeking a declaratory judgment that "Teleco has no obligation to arbitrate the

claims set forth in [Cine's] Demand for Arbitration" and injunctive relief enjoining the

arbitration proceeding. Compl. ¶¶ 31-39, ECF No. 1, Nov. 21, 2013. In lieu of an answer,

plaintiff filed a motion to compel arbitration. ECF No. 18, Mar. 24, 2014. Defendant filed a

response to plaintiff's motion and simultaneously moved "for an order permanently staying the

demand for arbitration." ECF No. 19, Apr. 8, 2014.

Plaintiff argues that a stay is warranted (and an order to compel arbitration is not

warranted) for two reasons: (1) the November 1998 contract containing the arbitration provision

upon which defendant relies never came into existence, and (2) if a valid contract was formed in

November 1998, plaintiff waived his rights under that contract's arbitration clause by

participating in protracted litigation in Haitian courts and waiting over six years to serve a

demand. Defendant counters that an enforceable contract was formed in November 1998, and

that only an arbitrator may determine the issue of waiver once there has been a determination

2

that a valid contract was formed. (Neither party has argued that the Shareholders Agreement itself, having come into existence in 1998, has since lapsed or otherwise become unenforceable.)

As explained below, a trial may be required to resolve the threshold issue whether a valid contract between the parties was formed in November 1998. *See Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 30 (2d Cir. 2001) ("If the making of the agreement to arbitrate is placed in issue . . . the court must set the issue for trial."); *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972) ("[I]f it was claimed that . . . there had at no time existed as between the parties any contractual relation whatever, . . . a trial of this issue would be required before an order could be issued directing the parties to proceed to arbitration.") (quoting *In re Kinoshita & Co.*, 287 F.2d 951, 953 (2d Cir. 1961)). Because it is uncertain whether the contract existed, the court does not yet need to resolve the vexing question whether it is the purview of the judge or an arbitrator to resolve the issue of waiver.

## II.  Facts

Franck Cine, a resident of Great Neck, New York, is the founder of Haitel, the first mobile telephone company in Haiti. *See* Compl. ¶ 10; Def.'s Mot. to Compel Arbitration, *1, ECF No. 18, Mar. 24, 2014. When Haitel launched in 1998, it needed to purchase a frequency band on which to operate.

Teleco owned such a frequency band—the 1.9 GHz band—which it agreed to license to Haitel for 15 years. On June 25, 1998, Haitel and Teleco entered into an agreement (the "Licensing Agreement") in which Haitel promised to pay Teleco $14.5 million and 5% of its net profits in exchange for the license. The agreement was signed for Teleco by Fritz Jean, the company's president. There is no dispute that Jean was authorized to sign the Licensing Agreement on Teleco's behalf, and that the Licensing Agreement lacks an arbitration provision.

3

On November 24, 1998, Cine, Haitel, Teleco, and several other entities entered into three new agreements, including a "Shareholders Agreement" that purported to supersede the June 25, 1998 Licensing Agreement. *See* Shareholders Agreement, § 11.12, attached as Ex. C. to Def.'s Mot. to Compel Arbitration, ECF No. 18, Mar. 24, 2014. Under the new arrangement, Haitel issued 15,000 shares to Teleco as security for the amount owed under the Licensing Agreement. *Id.* § 3.05. The agreement was signed for Teleco by Julio Cadet, the company's general manager. Teleco now questions whether Julio Cadet had the authority in November 1998 to sign a binding agreement on behalf of Teleco, but it never challenged the validity of the Shareholders Agreement in writing. Hr'g Tr. 5:24-6:4, 10:8-10:11, Apr. 28, 2014.

The Shareholders Agreement contains an Article addressing "Dispute Resolution." It provides for resolution of disputes and for arbitration in comprehensive provisions:

> 10.01 Disputes. Within ten (10) days of the written request of any Shareholder, the Shareholders shall meet to negotiate in good faith a resolution of any dispute, Claim or controversy arising out of or relating to this Agreement, or the breach, termination or invalidity thereof (a "Dispute").
>
> 10.02 Arbitration. Any Dispute that cannot be resolved pursuant to Section 10.01 above within thirty (30) days of the written request provided pursuant to Section 10.01, shall be settled by arbitration in accordance with the Arbitration Rules of the United Nations Commission on International Trade Law ("UNCITRAL Rules") as in force on the date of commencement of arbitration, and as modified by this Section. ADR Associates, of Washington, D.C., U.S.A. shall serve as both the appointing authority and the administering body under the UNCITRAL Rules. ADR Associates shall appoint a single arbitrator of a nationality other than the nationalities of the Parties. All arbitration proceedings shall be conducted in English. The place of arbitration shall be Bermuda. Neither the Parties, the arbitrator, nor ADR Associates shall disclose the existence, content or results of any arbitration except with the prior written consent of all Parties to the arbitration. The law governing the arbitration proceedings shall be the Bermuda International Arbitration Act of 1993. The arbitrator shall abide by the rules of Ethics for International Arbitrators established by the International Bar Association. The arbitrator's authority to grant relief is subject to the terms of this Section, the terms of this Agreement and the laws of Haiti. The arbitrator shall have no authority to award exemplary, punitive or treble damages. Each Party shall pay an equal share of the costs of the arbitration (as defined in Article 28 of

the UNCITRAL Rules) except that each Party shall pay the expenses it incurs for its own legal representation and assistance. Judgement on the award may be entered in any court of competent jurisdiction. The post-award proceedings shall be governed by the Inter-American Convention on International Commercial Arbitration of 1975 (the Panama Convention). The validity and construction of this Section shall be governed by the law of the State of New York, U.S., without regard to its conflict of laws rules.

10.03 <u>Timing and Location of Arbitration. Consolidation of Disputes</u>. The Shareholders agree that any arbitration process related to this Agreement shall be structured in such a way as to enable a decision to be rendered by the arbitrators within ninety (90) days of the date of the commencement of such arbitration. The arbitrators, in their discretion, may consolidate two or more arbitrations, claims or Disputes between any of the parties arising pursuant to this Agreement or any other agreement among the Shareholders or to which any Shareholder is a party into one arbitration, or terminate any such consolidation and/or establish other arbitration proceedings for different claims that may rise in anyone arbitration.

Shareholders Agreement §§ 10.01-10.03.

On July 5, 2007, Teleco filed suit against Haitel in a Haitian court, claiming that Haitel owed Teleco millions of dollars stemming from Haitel's use of the frequency band. Haitel and Cine have actively participated in this litigation; it remains pending. Haitel alleges (and Cine does not dispute) that the following in the litigation has occurred:

(1) The discovery process began on June 9, 2007, when Haitel served document requests on Teleco. Pl.'s Mem. of L. in Supp. of Pl.'s Mot. for a Permanent Stay of Arbitration, *8, ECF No. 20, Apr. 8, 2014. Haitel received some documents, but protested that Teleco's disclosures were incomplete. *Id.* (discussing Haitel's July 23, 2007 *conclusions* and August 30, 2007 *conclusions additionnelles*).

(2) At some point after September 2007, Teleco unilaterally removed Haitel from Teleco's telecommunication interconnection system. Cine and Haitel promptly protested to the tribunal, which ordered Teleco to reestablish the connection. Teleco complied. *Id.*, *9.

(3) On July 1, 2008, after Teleco moved to close the discovery process, Haitel moved to have the trial judge recuse herself for "suspected bias." The motion was granted. *Id.*

(4) On February 10, 2009, Haitel moved to have the new trial judge, and all other Port-au-Prince-based judges, recuse themselves. The motion was granted. The legality of this mass recusal is now pending before Haiti's highest court. *Id.*

It is unclear whether, under Haitian law, Cine participated in these legal proceedings in his individual capacity or as an officer of Haitel. *Compare* Pl.'s Supp. Mem. of L., ECF No. 56, May 13, 2014, *with* Def.'s Reply in Supp. of Mot. to Compel Arbitration, ECF No. 68, May 29, 2014. It is undisputed, however, that Haitel sought to have the tribunal imprison Cine "so as to force Haitel to perform its [purported] obligations." Decl. of Gelin Collot, Ex. 4, ECF No. 35, Apr. 8, 2014.

Several notable factors have prolonged resolution of the legal dispute. For reasons that remain contested, Cine was jailed in Haiti from June 2007 to July 2009. Supp. Decl. of Franck Cine, *1, ECF No. 67, May 27, 2014. The extent to which imprisonment limited Cine's ability to actively participate in the litigation is unclear. Cine came to the United States to receive medical care upon release. Six months later, a large earthquake struck Haiti, claiming tens of thousands of lives and causing "unimaginable" destruction. *See* Simon Romero, *Haiti Lies in Ruins; Grim Search for Untold Dead*, N.Y. Times, Jan. 13, 2010, at A1.

Since early 2011, Cine has been in regular contact with high-ranking Haitian government officials. Supp. Decl. of Franck Cine, *1-5, ECF No. 67, May 27, 2014. The disaster forced the postponement of Haiti's general elections, originally scheduled for February 2010. The results were not finalized until April 4, 2011. *See* Randal C. Archibold, *Popular Carnival Singer is Elected President of Haiti in a Landslide*, N.Y. Times, Apr. 4, 2011, at A4.

The precise legal relationship between the Haitian government and Teleco is disputed. *See, e.g., United States v. Esquenazi*, 2014 WL 1978613, --- F.3d --- (11th Cir. May 16, 2014) (holding "Teleco would qualify as a Haitian 'instrumentality' under almost any definition we could craft" for purposes of Foreign Corrupt Practices Act).)

In September 2011, a meeting was held in New York between Cine, the President, the Prime Minister, and other Haitian officials, during which Cine sought a settlement agreement to resolve both his personal financial issues and those facing Haitel. *See* Supp. Decl. of Franck Cine, ECF No. 67. On multiple occasions, the parties appeared to be on the edge of a settlement. *See id.* (discussing near agreements in April 2012 and October 2012).

In May 2013, apparently frustrated at the slow pace of settlement talks with government officials, Cine informed the Haitian government the he and Haitel would file a demand for arbitration under the November 1998 Shareholders Agreement. The demand for arbitration was served on Haiti's Prime Minister, Laurent Lamothe, while he was visiting Florida on August 26, 2013. The demand was filed with JAMS, the successor to the arbitrator identified in the Shareholders Agreement, on September 17, 2013.

Teleco represents that the litigation process has been costly and burdensome. It estimates a loss of "tens of millions of dollars" as a result of Cine's delay in exercising whatever arbitration rights may have existed under the Shareholders Agreement. Hr'g Tr. 20:2-20:11. Apart from the ordinary costs associated with litigation, Teleco apparently has been forced to rely on a line of credit to remain operational during the prolonged dispute. *See* Pl.'s Mem. of L. in Supp. of Pl.'s Mot. for a Permanent Stay of Arbitration, *12-13, ECF No. 20, Apr. 8, 2014; Hr'g Tr. 20:16-20:23, Apr. 28, 2014. The controversy also may have compromised Teleco's ability to find an alternative purchasers for the license claimed by Haitel. *Id.*; *see also* Hr'g Tr.

22:7-22:16 (Cine concedes that the license was a valuable, revenue-generating property when it was being used by Haitel).

Teleco filed the instant suit against Cine, in his personal capacity only, on November 21, 2013. *See* Compl., ECF No. 1, Nov. 21, 2013.

## III.   Law

### 1.  Contract Formation

Because arbitration is a matter of contract, a party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir. 2003) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960)). Arbitration cannot be compelled until a resolution of the issue concerning "the very existence of the contract embodying the arbitration clause." *Bank of Am., N.A. v. Diamond State Ins. Co.*, 38 Fed. App'x 687, 689 (2d Cir. 2002) (citation and quotation marks omitted).

### 2.  Waiver

Even if there exists a valid and enforceable contract in which the parties agree to arbitrate particular disputes, a party may waive "its right to arbitration if it engages in protracted litigation that results in prejudice to the opposing party." *S & R Co. of Kingston v. Latona Trucking, Inc.,* 159 F.3d 80, 83 (2d Cir.1998) (quoting *Cotton v. Slone,* 4 F.3d 176, 179 (2d Cir.1993)). Waiver of arbitration rights hinges on three factors: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010). "There is no rigid formula or bright-line rule for identifying when a party has waived its right to

arbitration; rather, the above factors must be applied to the specific context of each particular case." *Id.*

## IV. Application of Law to Facts

### 1. Remedial Power of the District Court

The plaintiff's motion for a stay of arbitration (and defendant's response to plaintiff's motion) fail to address whether federal courts have the power to stay an anticipated arbitration proceeding where no application for an order to compel arbitration has been made. "[I]t is not [an issue the court] can ignore . . . . Although it is not a question upon the answer to which [the court's] jurisdiction depends, [the court] view[s] it as one [the court] ought to address inasmuch as it implicates the remedial *powers* of the court." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140 (2d Cir. 2011) (emphasis in original) (citation and quotation marks omitted).

Whatever the court's authority in such circumstances, federal law explicitly authorizes a district court to compel arbitration upon a proper motion. 9 U.S.C. § 4. In response to plaintiff's request for a stay, defendant has filed with this court a "motion to compel arbitration." ECF No. 18, Mar. 24, 2014. Within thirty days, defendant shall state in writing whether his motion to compel arbitration in the instant matter is also an application for an order to compel arbitration with respect to any underlying dispute identified in plaintiff's complaint.

### 2. Contract Formation

Plaintiff first argues for a stay of arbitration (and opposes defendant's motion to compel arbitration) on the grounds that the November 1998 Shareholders Agreement—which contains the arbitration clause upon which defendant relies—is "void and unenforceable against Teleco." Pl.'s Mem. of L. in Supp. of Mot. for a Permanent Stay of Arbitration, *18, ECF No. 18, Apr. 8, 2014. The Shareholders Agreement, plaintiff urges, was signed by a Teleco officer "who did not

have a mandate from Teleco's Board that authorized him [to] sign a contract with Haitel[;] only [another Teleco officer, the President of the Board] had the authority to bind Teleco on a contract with Haitel." *Id.* Thus, no valid contract—and, by extension, no arbitration agreement—ever came into force.

The enforceability of the parties' purported agreement to arbitrate hinges, in the first place, on the validity of the Shareholders Agreement. "If the contract embodying a purported arbitration agreement never existed, the arbitration itself does not exist." *Adams v. Suozzi*, 433 F.3d 220, 226 (2d Cir. 2005).

New York choice-of-law rules require application of Haitian law to the threshold question whether the Shareholders Agreement was ever binding on Teleco. *See Auten v. Auten*, 308 N.Y. 155, 161 (N.Y. 1954) (endorsing "significant contacts" test); *First Options v. Kaplan*, 514 U.S. 938, 944 (1995) ("[W]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."); *Adams*, 433 F.3d at 227 ("When contract formation is at issue in an FAA case, we generally apply state-law principles."); *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) ("Whether parties have obligated themselves to arbitrate certain issues, including the question of arbitrability, is determined by state law."); *Bell v. Cendant Corp.*, 293 F.3d 563 (2d Cir. 2002) ("Because an agreement to arbitrate is a creature of contract . . . the ultimate question of whether the parties agreed to arbitrate is determined by state law"); *Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG*, 970 F. Supp. 2d 157, 165 (S.D.N.Y. 2013) (applying New York law, rather than federal common law, "to the [threshold] issue whether [the parties] have in fact entered in an agreement to arbitrate").

This conclusion that Haitian law controls contract viability is bolstered by the express terms of the purported contract. It provides that "[t]his agreement shall be governed by and construed and enforced in accordance with the laws of Haiti." Shareholders Agreement, § 11.12 ("Governing Law"); *but see id.* § 10.02 ("The validity and construction of this Section [addressing dispute resolution] shall be governed by the law of the State of New York, U.S., without regard to its conflict of laws rules.").

Defendant urges that federal common law governs in the contract formation inquiry. *Cf. Republic of Ecuador v. ChevronTexaco Corp.*, 376 F. Supp. 2d 334, 352 (S.D.N.Y. 2005) (discussing competing Second Circuit authority on question whether state law or federal common law applies "to question of whether a party is bound by a purported agreement to arbitrate"). This approach is unacceptable in the context of this contract formation dispute. Plaintiff cannot be compelled to arbitrate a dispute where the arbitration clause at issue is contained within a broader agreement to which Teleco never consented. *See Warrior & Gulf Navigation Co.,* 363 U.S. at 582 ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

Resolution of the issue respecting validity of the encompassing contract depends on competing interpretations of foreign law and complex issues of fact. Until a trial has resolved these issues, an order to compel or stay arbitration cannot be considered.

### 3.    Waiver of Arbitration Clause

Assuming that a valid contact came into existence in November 1998, plaintiff argues that defendant waived the rights created by the Shareholders Agreement's arbitration clause by participating in protracted litigation in Haitian courts and waiting six years to file an arbitration demand.

Disputed is whether the merits of plaintiff's arbitration waiver argument may be considered by this court. There are two apparently inconsistent lines of cases within the Court of Appeals for the Second Circuit addressing the issue. *Compare Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011) (holding waiver must "be decided by the arbitral panel in the first instance") *with Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 157 (2d Cir. 2010) (affirming district court's determination that plaintiff "waived [right to arbitration] by expressing its intent to resolve the dispute through litigation"); *see also Gov't Employees Ins. Co. v. Grand Med. Supply, Inc.*, 11-CIV-5339, 2012 WL 2577577, *7, n.3 (E.D.N.Y. July 4, 2012) (discussing conflicting authority).

Supreme Court dicta appears to support the former approach. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("[T]he presumption is that the arbitrator should decide allegation[s] of waiver, delay, or a like to defense to arbitrability.") (citation and quotation marks omitted); *id.*, 537 U.S. at 85 (noting that the comments to the Revised Uniform Arbitration Act of 2000 provide that "in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, *i.e.,* whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide."). This difficult question will be considered when and if it is necessary to do so.

## V.  Conclusion

Trial shall commence at 10:00 a.m. on November 24, 2014 on the issue of contract validity.

By November 17, 2014, the parties shall submit to the court proposed *in limine* motions and supporting briefs. They shall exchange and file (1) lists of pre-marked exhibits proposed for use at trial, together with copies of all exhibits, and stipulations regarding admissibility, (2) lists of potential witnesses together with brief summaries of proposed testimony, and (3) stipulations with respect to all undisputed facts. Argument on all *in limine* motions will be heard immediately before trial.

The parties shall provide notice pursuant to Federal Rule of Civil Procedure 44.1 and other applicable provisions of the Rules regarding anticipated evidence and expert testimony germane to Haitian law. No jury has been demanded. *See* 9 U.S.C. § 4.

Motions for summary judgment or other pretrial relief, if any, shall be filed within sixty days. The matter is respectfully referred to the magistrate judge for expedited discovery.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: June 11, 2014
Brooklyn, New York